IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION

Patricia Wade,

   Plaintiff,

v.

Robert Bravi, individually, and as agent for CHICAGO TRANSIT AUTHORITY; and CHICAGO TRANSIT AUTHORITY,

   Defendants.

No. 04 C 5173

## MEMORANDUM OPINION AND ORDER

Plaintiff Patricia Wade ("Wade") is a bus driver employed by the Chicago Transit Authority ("CTA"). In the summer of 2003, Wade's union, Local Union 241 of the Amalgamated Transit Union (the "union"), and the CTA were engaged in negotiations for a new labor contract. In support of its position, the union held a series of protest rallies at the Merchandise Mart in downtown Chicago. Wade attended a number of these rallies in August, 2003, during which she carried signs and discussed the labor practices of the CTA with fellow participants. These rallies were also attended by CTA managers, including the general manager of the Chicago Avenue garage where Wade was based, Robert Bravi ("Bravi").

As part of the ongoing protest against the CTA, the idea was promoted that drivers should engage in a work slowdown in order to disrupt CTA service. On the morning of August 19, 2003, Wade drove

CTA Bus #6650 on the #70 Division route. Juanita Zimmerman ("Zimmerman") was a passenger on Wade's bus that morning. According to Zimmerman, she observed that Wade was intentionally driving slowly and driving past passengers at the bus stop. Prior to disembarking, Zimmerman confronted Wade about her driving and questioned her as to why she was driving slowly. Zimmerman states that Wade answered that she was driving slowly as part of a labor protest. After disembarking, Zimmerman called the CTA to file a complaint against Wade and related her version of the interaction with Wade. The complaint was forwarded shortly thereafter to the Vice President of Bus Operations, William Mooney ("Mooney"), who then forwarded it on to the manager of Wade's garage, Bravi. Upon receiving the complaint that same day, Bravi instructed a transportation manager, Antonio McFadden, to locate Wade and bring her back to the garage. At this point, Bravi made a follow up call to Zimmerman regarding the complaint. In this conversation, Zimmerman verified the allegations of the original complaint.

Upon returning to the garage, McFadden met with Wade to discuss the complaint against her. At this meeting, Wade denied Zimmerman's accusations. Wade told McFadden that her delay had been caused by a defective farebox and that she had not made any remarks regarding a slowdown to Zimmerman. At some point either during this meeting or shortly thereafter, McFadden informed Wade

that she was suspended without pay pending an investigation of the charges.

Wade had two more meetings with CTA management while she remained in suspension before having a final meeting regarding the incident with Bravi on September 23, 2003. At all three of these subsequent meetings with CTA management, Wade maintained her innocence and claimed her delay was due to a broken farebox. At the final meeting, it was determined that Wade would be reinstated, would be given one year probation, and would be repaid all lost wages with the exception of five days pay which would serve as a penalty for her participation in the work slowdown. Bravi had consulted with Mooney prior to this meeting to determine Wade's punishment.

On August 5, 2004, Wade filed this complaint against the CTA and Bravi. Wade's complaint contains four counts: 1) a 42 U.S.C. § 1983 action for violation of her First Amendment Rights; 2) a state law action for intentional infliction of emotional distress; 3) a § 1983 action for violation of her Fourteenth Amendment due process rights; and 4) a state law claim for respondeat superior and indemnification. Defendants seek summary judgment on all counts.

Summary judgment is appropriate where the record shows that there is no genuine issue of material fact and that the moving party is entitled to judgment as a matter of law. *Lexington Ins.*

*Co. v. Rugg & Knopp*, 165 F.3d 1087, 1090 (7th Cir. 1999); FED. R. CIV. P. 56(c). I must construe all facts in the light most favorable to the non-moving party and draw all reasonable and justifiable inferences in favor of that party. *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 255, 91 L. Ed. 2d 202, 106 S. Ct. 2505 (1986). Defendants have also moved to strike certain paragraphs of Wade's statement of additional material facts and certain responses made by Wade to their statement of material facts. To the extent the assertions in these paragraphs and responses have no basis in the record, they have not been considered.

## I. Retaliatory Suspension

The crux of Wade's First Amendment complaint is that the CTA used the Zimmerman complaint of a work slowdown as a pretext for suspending her in retaliation for her participation in the protest rallies. Wade does not allege that the Zimmerman complaint was concocted or a sham, but rather that the CTA unjustifiedly relied on it in suspending her in light of other exculpating evidence. Defendants maintain that Wade was disciplined for the sole reason that she engaged in a work slowdown.

In order to establish a claim for retaliation in violation of the First Amendment under § 1983, Wade must show that: 1) her speech was protected; 2) her speech was a substantial or motivating factor in the retaliatory action; and 3) the defendants have an opportunity to establish that the same action would have been taken

in the absence of the employee's protected speech. *Spiegla v. Hull*, 371 F.3d 928, 935 (7th Cir. 2004). Assuming, *arguendo*, that Wade could establish that her speech was protected, I turn first to the second and third factors in order to determine if either is dispositive.

Turning to the second factor, Wade must show that her protected speech was a motivating factor in her suspension. Wade does not point to any direct evidence that demonstrates that her participation in the rally was a factor in the decision to suspend her. For example, Wade does not show that her participation in the protest rallies was disapproved of by anyone in the CTA, or that anyone in the CTA generally viewed participation in the protest rallies by employees negatively. Wade also has not presented any evidence from which an inference of a retaliatory motive could be drawn. For example, Wade does not show that other participants in the protest rallies were also disciplined, or that other drivers accused of a work slowdown who had not attended the protest rallies were treated less harshly.

In fact, when stripped of unsupported factual assertions, the only evidentiary link proposed by Wade between the protest rallies and her suspension is that CTA management may have been aware of her individual presence at the protest rallies which preceded her suspension. In an attempt to establish a stronger link, Wade makes claims that the CTA management attended the rallies in order to

5

keep track of which employees were in attendance and that "William Mooney testified that he wanted to identify the employees who attended the rallies . . . ." The cited portion of William Mooney's deposition, however, provides no basis for these assertions. Mooney stated in his deposition that the CTA kept no record of individual employees attending the rallies. Wade has provided nothing but speculation in support of her claim that the CTA did in fact keep track of the individual employees attending the protest rallies.

Generally, a plaintiff may establish a causal link by showing that adverse action was taken "on the heels of" protected activity. *Spiegla*, 371 F.3d 928, 943; *But see O'Connor v. Chicago Transit Auth.*, 985 F.2d 1362, 1368 (7th Cir. 1993)(holding that the fact protected activity precedes adverse action does not alone show motivation). In this case, the significance of this inferred causal link is greatly undermined by the fact that in between the protected activity and the adverse action, Zimmerman, an uninterested third party, filed a complaint of a work slowdown, which undisputedly constitutes a serious and actionable violation of CTA policy. A reasonable fact-finder could not conclude that Wade's participation was a substantial or motivating factor in her suspension based only on this evidence of timing and potential awareness.

Additionally, a review of the record demonstrates that Wade's claim also could not succeed under the third factor of the test. Defendants have adequately met their burden under the third factor by showing that the same disciplinary action would have been taken regardless of Wade's participation in the protest rallies. Defendants have shown that they determined Wade had performed a work slowdown and that it was CTA policy to discipline employees found to have conducted a work slowdown.

Having shown a legitimate reason for Wade's suspension, the burden shifts back to Wade in order to show that defendants' justifications are pretextual. *Vukadinovich v. Bd. of Sch. Trs. of N. Newton Sch. Corp.*, 278 F.3d 693, 699 (7th Cir. 2002). A plaintiff may prove pretext either by offering direct or indirect evidence. *Id.* at 699-700. In reviewing the defendants' decision, it is not the court's function to determine if the defendants came to the correct decision in suspending Wade because, even if the defendants' reasons for suspension were "mistaken, ill considered or foolish, so long as [defendants] honestly believed those reasons, pretext has not been shown." *Jordan v. Summers*, 205 F.3d 337 (7th Cir. 2000).

Wade's only attack on the finding of a work slowdown as pretextual is that the finding is erroneous because exculpating evidence of a broken farebox clearly demonstrated her innocence. Defendants relied on Zimmerman's verified complaint in reaching its

7

decision and thus the decision has a basis in fact. That defendants either were unaware of the alleged farebox defect, or were simply unconvinced that the problem exculpated Wade in light of Zimmerman's affidavit, does not prove pretext. Wade's evidence of a broken farebox shows that a different decision could have been reached, but does not demonstrate that defendants did not honestly believe Wade had performed a work slowdown. In terms of challenging the sincerity of defendants' belief, Wade provides only speculation in concluding that defendants intentionally ignored evidence of the broken farebox.

Further cutting against both Wade's claim of pretext and her showing of causation is the fact that Mooney's testimony indicates that all drivers accused of a slowdown, whether they attended protest rallies or not, were subject to the same process and discipline as Wade. Wade does not contest or provide contradicting evidence to Mooney's testimony stating that all drivers accused of a slowdown were taken from their route and initially suspended pending an investigation; that anyone found to have performed a work slowdown was ultimately disciplined; and that it was policy to accept a verified customer complaint as determinative. Since Wade does not challenge the authenticity of Zimmerman's verified complaint, the complaint in and of itself demonstrates that discipline would have taken place despite Wade's participation in the protest.

Because Wade cannot prove a § 1983 violation of the First Amendment under the second or third factors, I grant summary judgment for defendants on this claim.

## II. Due Process - 14th Amendment

Wade claims that the process she received surrounding her suspension violated her Fourteenth Amendment due process rights. A due process claim must be based on a violation of a protected liberty or property interest. *Smith v. Eaton*, 910 F.2d 1469, 1471 (7th Cir. 1990). Wade had a protectable property interest in her continued employment at the CTA that was implicated by her suspension. As a result, Wade was entitled to notice and a hearing prior to discipline. *Id.*

Wade's suspension occurred on August 19th. Wade attacks the process she received that day claiming, *inter alia*, that "Bravi's orders [to suspend Wade] were given to McFadden *before* the latter's perfunctory 'interview' with the Plaintiff, thus undercutting any notion that Plaintiff was afforded a fair hearing before being suspended." According to McFadden's deposition, the decision to suspend Wade was made prior to the meeting where Wade was allowed to present her side of the story. Thus, any process given would have been ineffectual because the decision to suspend her had already been made.[1] *See Wainscott v. Henry*, 315 F.3d 844, 853 (7th

---

[1] There is also a disputed issue of fact as to whether Bravi, Mooney, or both individuals made the decision to suspend Wade.

9

Cir. 2003); *Hunt v. Fairman*, 1998 U.S. Dist. LEXIS 2378 *12-13 (N.D. Ill. 1998). Furthermore, the CTA has not argued that concerns exist that outweigh Wade's interest in pre-deprivation process.

On the other hand, Bravi's deposition states that the decision to suspend Wade was made after he conferred with McFadden regarding his meeting with Wade, in which case she had the opportunity to present her side of the story. In this case, the process given Wade could be deemed adequate. Accordingly, I find that a there is a genuine issue of material fact as to whether Wade received adequate process during her initial suspension. I find Wade's other claims of due process violation to be without merit, however.[2]

Having determined that a due process claim may go forward, I now turn to the related matter of determining who the claim may proceed against. Defendants argue the claim may not be brought against the CTA as an entity because Wade has not established a basis for municipal liability. To establish municipal liability under § 1983, a plaintiff must show a claimed constitutional injury

---

[2] For example, Wade claims a violation of due process because she was not able to confront and cross-examine Zimmerman. Wade cites no authority for this right, however, and the Court has found this argument to be without merit. *See e.g., Staples v. Milwaukee*, 142 F.3d 383 (7th Cir. 1998) ("Staples's argument that he was entitled to an opportunity to present witnesses in his defense, to confront adverse witnesses, and to cross-examine them is wrong.")

caused by: 1) an express policy of the municipality; 2) a widespread practice that is so permanent and well settled as to constitute a custom or usage with the force of law; or 3) a person with final policymaking authority made the decision. *Chortek v. City of Milwaukee*, 356 F.3d 740, 748 (7th Cir. 2004). Wade's argument for the imposition of municipal liability under § 1983 centers entirely around the behavior of the CTA regarding her First Amendment claim and is unrelated to the alleged due process violations. Therefore, Wade has not presented a basis for municipal liability and this claim may proceed against Bravi in his personal capacity only. The court also points out that damages related to this claim are limited to the consequences of having been denied a hearing before disciplinary action was taken. *See Alston v. King*, 157 F.3d 1113, 1118 (7th Cir. 1998).

### III. Intentional Infliction of Emotional Distress

Wade also brings a state law claim for intentional infliction of emotional distress. Without detailing specific instances of conduct in her brief, Wade alleges that the circumstances surrounding her retaliatory suspension give rise to this cause of action. In order to establish a claim for intentional infliction of emotional distress, Wade must show the conduct she suffered was 1) extreme and outrageous conduct; 2) the defendant intended to cause harm; 3) the defendant's conduct caused the sever emotional distress. *McGrath v. Fahey*, 533 N.E.2d 806, 809 (Ill. 1988).

11

Taken in the light most favorable to Wade, the events surrounding Wade's suspension simply do not rise to the level of extreme and outrageous conduct. *See e.g. Harriston v. Chicago Tribune Co.*, 992 F.2d 697 (7th Cir. 1993); *Briggs v. North Shore Sanitary Dist.*, 914 F. Supp. 245, 252 (N.D. Ill. 1996).

Accordingly, I grant summary judgment on this claim. Having dismissed the only state claim, Wade's fourth claim for respondeat superior liability against the CTA is also dismissed.

**ENTER ORDER:**

---
Elaine E. Bucklo
United States District Judge

**DATED:** December 15, 2005